# Red Bell Brewing Co. v. Buchanan Ingersoll P.C.

*Mark J. Krum,* for plaintiff.
*Paul R. Rosen,* for defendants.

SHEPPARD JR., *J.,* March 13, 2001—Defendants Buchanan Ingersoll P.C. and Kevin Silverang have filed preliminary objections to the complaint of plaintiff Red Bell Brewing Company. For the reasons set forth in this opinion, the court is issuing a contemporaneous order essentially overruling the objections.[1]

## BACKGROUND

Red Bell is a Philadelphia microbrewery that was formed by several investors, including James R. Bell, on June 29, 1993. In November 1997, Red Bell began discussions with GS Capital L.P. regarding a possible joint venture involving GSC, Red Bell and an employee

---

1. The breach of contract claims as to defendant Silverang only, is dismissed.

stock ownership plan to be established in the future. This venture was to involve joint ownership of a microbrewery and restaurant at Reading Terminal Market that would be managed and operated by Red Bell (terminal site). During the course of these discussions, GSC was represented by Silverang, who was working at Kaufman, Coren, Ress, Weidman & Silverang P.C. (Kaufman Coren) at that time.[2]

In November 1997, Silverang resigned his position at Kaufman Coren and became a partner at Buchanan. However, Silverang continued to represent GSC and began representing Red Bell in the venture discussions as well. The parties ultimately entered into a letter of intent under which GSC agreed to provide venture capital for the construction and operation of the terminal site. In exchange, Red Bell agreed: (a) to assign ownership of the leases of the terminal site to GSC and an entity to be formed, (b) to grant GSC a right of first refusal on all future Red Bell brewpubs and restaurants, and (c) to enter into a management agreement.[3]

At about this time, Buchanan and Silverang began representing Red Bell in other financial ventures and corporate transactions. From December 1997 through March 1999, the defendants represented Red Bell in acquisitions, initial public offering discussions, securities registration compliance and explorations of recapitalization options. Red Bell alleges that the defendants became intimately familiar with Red Bell's con-

---

2. The complaint is silent as to Red Bell's representation.

3. Under the management agreement, as conceived at the time, Red Bell would earn base and incentive management fees and would retain an option to convert its management fee into an ownership interest, subject to certain conditions and GSC's termination rights.

fidential business and financial information, including Red Bell's business structure, capitalization needs and contracts.

During the time that the defendants were representing Red Bell, they continued providing legal services to both GSC and Red Bell in connection with the venture. Among these services was the formation of RBGSC. Investment Corp. a wholly-owned subsidiary of GSC responsible for the operation of the terminal site, and finalization and execution of the management agreement. Silverang and Buchanan also assisted GSC and Red Bell in additional joint ventures between the two companies, including the establishment of a brewpub/restaurant at the Philadelphia International Airport. The complaint asserts that the defendants either knew or should have known that these actions would create a conflict of interest.

In July 1998, Red Bell began planning an initial public offering of its stock and received a written engagement letter from Buchanan regarding representation of Red Bell in this endeavor. In the engagement letter, Buchanan disclosed its representation of GSC and stated that it would continue this relationship "even though this representation may conflict with [Red Bell's] position as a party to the [management] agreement." Red Bell, however, alleges that neither Buchanan nor Silverang ever fully disclosed "the adverse nature of the concurrent representations" or provided a "full and clear explanation that they [would] be loyal only to [GSC]. . . ." Complaint at ¶24.

Between July and November 1998, GSC hired Nicholas Sommaripa to oversee the construction and operation of the terminal site without Red Bell's knowledge

or consent. On November 16, 1998, Red Bell informed the City of Philadelphia of allegedly wrongful conduct by GSC and Sommaripa. Later that day, Buchanan unilaterally withdrew and purportedly terminated its representation of Red Bell due to a "business conflict." Red Bell alleges that this was done so that Buchanan could continue its relationship with GSC and "abandon" its relationship with Red Bell in the face of an irreconcilable conflict of interest.

Buchanan and Silverang drafted a settlement agreement to resolve the smoldering disputes among Red Bell, GSC and RBGSC.[4] The settlement agreement provided for the mutual release of all parties from claims arising from the operations at the terminal and airport sites and the resignation of Red Bell as construction manager of the terminal site. Red Bell signed the settlement agreement on December 10, 1998, allegedly "under coercion or threat of cessation of funding from [GSC]." Complaint at ¶33. In the months immediately following the execution of the settlement agreement, Silverang and Buchanan resumed their representation of Red Bell and counseled it relative to business plans and strategies, as well as capitalization alternatives.

On March 17, 1999, Silverang and Buchanan, acting on behalf of GSC, notified Red Bell that it was in default under the management agreement. Based on this alleged default, the defendants informed Red Bell of GSC's intention to withhold payment of management fees. At the same time, the defendants proposed a resolution whereby GSC would terminate Red Bell's inter-

---

4. Although it is referenced in the complaint, the settlement agreement is not attached to the complaint.

est in the terminal and airport sites. In a second letter, dated April 15, 1999, the defendants proposed a "settlement letter of intent," which, it appears, was never executed. On May 3, 1999, GSC terminated the management and license agreements.

Red Bell commenced an action against GSC, RBGSC and other GSC entities in May 1999.[5] Ultimately, Judge Pamela Pryor Dembe entered an order directing GSC and its affiliates to comply with the terms of the agreements and denying Red Bell's motion to disqualify Buchanan from representing the Red Bell action defendants.

On September 16, 1999, GSC caused RBGSC to file for bankruptcy.[6] During the course of the bankruptcy proceeding, RBGSC sold its interest in the airport and terminal sites. All of these actions are alleged to have been adverse to Red Bell and to have been effected on the advice of the defendants.

On the basis of these allegations, Red Bell alleges causes of action against the defendants for breach of contract negligence, breach of fiduciary duty, fraud and vicarious liability. The defendants counter that the claims are not legally sufficient and that the allegations in the complaint are not adequately specific.

## DISCUSSION

Because Silverang is not a signatory to the engagement letter, he cannot be held liable for alleged breaches

---

5. *Red Bell Brewing Co. v. GS Capital L.P.*, C.P. Phila., May 1999, no. 2759.

6. *In re RBGSC Investment Corp.*, no. 99-31799 (DAS). This matter is referred to as the "bankruptcy proceeding."

of the engagement letter, and the breach of contract action against him is dismissed. The remaining objections are, however, without merit and, accordingly, are denied.

When a court is presented with preliminary objections based on legal insufficiency,

" '[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer.' . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 (Pa. Super. 1999).

## I. *With the Exception of Bell's Affidavit, the Court May Consider the Documents Attached to the Objections*

For the purposes of reviewing the legal sufficiency of the complaint, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News*, 757 A.2d 938, 942 (Pa. Super. 2000). A court may rely also on documents "forming in part the foundation of the suit," even where a plaintiff does not attach such documents to its complaint. *Conrad v. Pittsburgh*, 421 Pa. 492, 495 n.3, 218 A.2d 906, 907 n.3 (1966). The use of such collateral information, however, should be strictly limited. See *220 Partnership v. Philadelphia Electric Co.*, 437 Pa. Super. 650, 655-56, 650 A.2d 1094, 1096-97 (1994) (cautioning against broad use of collateral facts).

Buchanan contends that the following documents not attached to the complaint are essential to Red Bell's case and may be considered by the court in reviewing the objections:

(1) The settlement agreement;

(2) A series of orders issued in connection with the bankruptcy proceeding;

(3) An affidavit given by Bell in connection with the Red Bell action; and

(4) An order issued by Judge Dembe on August 12, 1999 in connection with the Red Bell action.[7]

This court submits that the settlement agreement can be said to form part of the basis for Red Bell's claims. The essence of the complaint is that Buchanan and Silverang engaged in fraud and conduct that violated their contractual and fiduciary duties to Red Bell. One of the ways in which the defendants' alleged improper conduct was manifested was through Buchanan and Silverang's advice that executing the settlement agreement was in Red Bell's best interest. Complaint at ¶33. Examination of the settlement agreement itself is important to evaluate properly this allegation. Consequently, the complaint is based on the settlement agreement, in part, and the settlement agreement may be considered by the court when considering the objections asserting legal insufficiency.

Similarly, Red Bell alleges that RBGSC's filing for bankruptcy and the defendants' representation of GSC in the bankruptcy proceedings were adversed to Red Bell. Complaint at ¶43. As such, the writings related to

---

7. These documents are referred to collectively as the "attached documents."

RBGSC's bankruptcy can be said to form part of the basis for the complaint and may be considered in the context of the legal insufficiency objections. In addition, the defendants need not rely on case law to introduce the August 1999 order, as the complaint incorporates this document by reference. Complaint at ¶39.[8]

Of the attached documents, only the Bell affidavit can be said to have, at best, a tangential relation to the complaint. As the Bell affidavit was made on May 24, 1999, after the termination of Red Bell's relationship with the defendants on May 3, 1999, it does not serve as a basis for any of Red Bell's claims. In addition, Bell's affidavit was not incorporated into the complaint by reference. As a result, the court should not consider Bell's affidavit in evaluating the objections asserting insufficient specificity. However, it may examine the balance of the attached documents.

## II. *The Settlement Agreement Does Not Require Dismissal of the Complaint*

The defendants next argue that *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346 (1991), precludes negligence actions against attorneys by former clients and requires that the complaint be dismissed. This court disagrees.

In *Muhammad*, the Pennsylvania Supreme Court limited a client's right to bring a cause of action against his or her attorney:

---

8. The complaint also incorporates RBGSC's bankruptcy petition and "related legal papers" by reference. Consequently, even if the bankruptcy documents do not form the basis for the complaint, in part, they may considered incorporated by reference.

"Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable." 526 Pa. at 546, 587, A.2d at 1348.

The breadth of this holding later was narrowed in *McMahon v. Shea*, 547 Pa. 124, 700 A.2d 1329 (1997). There, the court noted that *Muhammad* was based on Pennsylvania's public policy of encouraging the settlement of disputes and preventing "Monday morning quarterback suits." 547 Pa. at 130, 700 A.2d at 1182. In limiting *Muhammad* to the facts of that case, the *McMahon* court concluded that the plaintiff's allegations that his attorney failed to advise him of a contract's controlling law constituted grounds for a permissible claim for negligence.

Our Superior Court reconciled the *Muhammad* and *McMahon* decisions in *Banks v. Jerome Taylor & Associates,* 700 A.2d 1329 (Pa. Super. 1997), extracting the following principles:

"In cases wherein a dissatisfied litigant merely wishes to second-guess his or her decision to settle due to speculation that he or she may have been able to secure a larger amount of money, *i.e.* 'get a better deal' the *Muhammad* rule applies so as to bar that litigant from suing his counsel for negligence. If, however, a settlement agreement is legally deficient or if an attorney fails to explain the effect of a legal document, the cli-

ent may seek redress from counsel by filing a malpractice action sounding in negligence." 700 A.2d at 1332.

The allegations in this complaint are more similar to the facts in *McMahon* than *Muhammad*. Red Bell alleges that the defendants failed to protect Red Bell's legal rights and to provide accurate material facts on which Red Bell's decisions were made. Complaint at ¶¶33-34, 43. The complaint also asserts that Buchanan and Silverang failed to disclose adequately the conflict of interest between Red Bell and GSC. Complaint at ¶¶20, 24. In summary, under the principles set forth in *Muhammad, McMahon* and *Banks,* Red Bell may proceed with its claims.[9]

### III. *Collateral Estoppel Does Not Preclude the Plaintiff from Asserting Its Claims Against the Defendants*

The doctrine of collateral estoppel[10] precludes a party from raising a particular issue when the following conditions are met:

"[T]he issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against

9. Even if this were not the case, Red Bell would be permitted to proceed with its fraud count, since *Muhammad* does not act to bar claims for fraud.

10. Collateral estoppel is an affirmative defense that is properly pled as a new matter in an answer to a complaint, not in preliminary objections. *Kituskie v. Corbman,* 452 Pa. Super. 467, 476, 682 A.2d 378, 382-83 (1996). Where a party responding to preliminary objections does not object to the manner in which collateral estoppel is raised, however, an objection to the inclusion of collateral estoppel arguments in preliminary objections is waived. *Commonwealth v. Desiderio,* 698 A.2d 134, 138 (Pa. Commw. 1997).

whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication." *In re Iulo*, __ Pa. __, __, 766 A.2d 335, 337 (2001) (citing *Safeguard Mutual Insurance Company v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)).

The defendants assert that the August 1999 order, which, in part, denied Red Bell's motion to disqualify Buchanan from representing GSC, estops Red Bell from raising any claims based on a conflict of interest here.

While the defendants' argument may have merit, none of the documents that this court may consider in reviewing the objections speaks to the basis for Red Bell's motion to disqualify or allows the court to conclude that the issue therein is identical to that presented here. Also, in examining the Red Bell action as a whole, there is no express mention of either of the defendants in the complaint. Thus it cannot be said, with certainty, that the Red Bell action focused on Red Bell's allegations of the defendants' misconduct. Furthermore, the bankruptcy proceeding court dissolved the August 1999 order, preventing it from being considered a final order. Defendants' exhibit 9, order at ¶3. Consequently, the August 1999 order does not estop Red Bell from bringing its claims. Cf. *Pompei v. Williams,* 731 A.2d 133, 135 (Pa. Super. 1999) (party held responsible for breach of sales agreement is not estopped from bringing a claim against counsel based on allegations of inadequate legal representation).

Defendants argue further that the RBGSC's bankruptcy decisions estop Red Bell from seeking damages for the value of the terminal and airport site leases and

attorneys' fees. In its relevant part, the bankruptcy court opinion states as follows:

"We reject all claims by [Red Bell] that certain provisions of the [settlement agreement, license agreement and management agreement] cannot be enforced against them because [Red] Bell was pressured into signing these contracts and that they manifested improper attempts by GS to wrest control of the sites away from [Red Bell]. . . .

"We find that any inequality of bargaining power between the Bell entities and the GS entities was slight and that no provisions of any of the contracts are so unreasonably or grossly favorable to the GS entities as to [be] substantively unconscionable." Defendants' exhibit 8 at 9, 12.

While these excerpts show that the bankruptcy court addressed the conscionability of the agreements, they do not relate to the issues presented by this complaint, namely the defendants' improper conduct and recovery on that basis. In sum, none of defendants' arguments are persuasive. Red Bell is not estopped from presenting the claims set forth in the complaint.

## IV. *The Complaint Alleges That Red Bell Has Suffered Damages*

Claims for breach of contract,[11] negligence and fraud require that the plaintiff suffer damages as a proximate

---

11. At least one Pennsylvania case holds that a breach of contract action does not require proof of damages or, consequently, causation. See *Grabowski v. Quigley,* 454 Pa. Super. 27, 41, 684 A.2d 610, 617 (1996) ("[a] cause of action [for breach of contract] exists even if no compensable loss can be shown because any breach gives rise to at least nominal damages"). However, this case appears to be an isolated

result of the defendant's conduct. See *Skipworth v. Lead Industries Association Inc.*, 547 Pa. 224, 231, 690 A.2d 169, 172 (1997) ("a plaintiff, in order to recover, must establish that a particular defendant's negligence was the proximate cause of her injuries"); *Gruenwald v. Advanced Computer Applications Inc.*, 730 A.2d 1004, 1014 (Pa. Super. 1999) (to prove fraud, a plaintiff must show injury that was proximately caused by reliance on the defendant's misrepresentation); *Logan v. Mirror Printing Co.*, 410 Pa. Super. 446, 448, 600 A.2d 225, 226 (1991) ("[i]n order to recover for damages pursuant to a breach of contract the plaintiff must show a causal connection between the breach and the loss").

Red Bell alleges that its damages include deprivation of leasehold interests in the sites, loss of investments made in the sites and legal fees. These damages, it asserts, were proximately caused by the defendants' improper actions, as set forth in the complaint. This court submits that this claim of proximate causation is tenable and that the complaint supports Red Bell's claim for damages.

## V. *Red Bell's Claim for Breach of Contract Is Legally Sufficient*

Next, the defendants narrow their argument and attack Red Bell's breach of contract claim. A successful breach of contract action requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank N.A. v. Cutillo*, 723 A.2d 1053,

---

example, with the general standard requiring damages resulting from the breach of the contract.

1058 (Pa. Super. 1999). (citation omitted) Some Pennsylvania cases hold that a plaintiff presenting a legal malpractice claim based on a breach of contract theory must show that the defendant-attorney "failed to follow a specific instruction of the client." *Rogers v. Williams,* 420 Pa. Super. 396, 401, 616 A.2d 1031, 1033 (1992). See also, *Duke & Co. v. Anderson,* 275 Pa. Super. 65, 70, 418 A.2d 613, 616 (1980) (a legal malpractice suit brought in assumpsit must allege that the attorney failed to follow specific client instructions). More recent cases, however, set a more expansive standard:

"[A]n assumpsit claim based on breach of the attorney-client agreement . . . is a contract claim and the attorney's liability in this regard will be based on terms of that contract. Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue. Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Bailey v. Tucker,* 533 Pa. 237, 251-52, 621 A.2d 108, 115 (1993). See also, *Fiorentino v. Rapoport,* 693 A.2d 208, 213 (Pa. Super. 1997) (if [an] attorney agrees to provide his or her best efforts and fails to do so, an action in assumpsit will accrue").

According to the engagement letter between Buchanan and Red Bell, Buchanan's goal "is to deliver to you quality legal services," and Red Bell's account "will be handled with the utmost of professionalism and proficiency at all times." Red Bell memorandum exhibit B at 2, 5. The complaint alleges facts that would establish a breach of each of these contractual promises. As a

result, Red Bell's claim for breach of contract may proceed.

## VI. *The Complaint Is Sufficiently Specific*

To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the allegations are "sufficiently specific so as to enable [a] defendant to prepare [its] defense." *Smith v. Wagner,* 403 Pa. Super. 316, 319, 588 A.2d 1308, 1310 (1991). See also, *In re Barnes Foundation,* 443 Pa. Super. 369, 381, 661 A.2d 889, 895 (1995) (" '[a pleading] should . . . fully summariz[e] the material facts,' . . . and '[a]s a minimum, a pleader must set forth concisely the facts upon which [a] cause of action is based' "). Allegations of fraud are held to a higher standard. Pa. R.C.P. 1019(b); see also, *Martin v. Lancaster Battery Co. Inc.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992) (an allegation of fraud must "explain the nature of the claim to the opposing party so as to permit the preparation of a defense" and be "sufficient to convince the court that the averments are not merely subterfuge").

The allegations in the complaint are sufficient to allow Buchanan and Silverang to prepare a defense. In addition, the detail of the allegations convinces this court that Red Bell's assertions represent more than mere subterfuge. As a result, the objections asserting insufficient specificity are denied.

## VII. *The Defendants' Position as Agents Relieves Silverang, but Not Buchanan, of Liability*

The defendants cite *Perlman v. Pittsburgh Cabinets & Builders Supplies Inc.,* 191 Pa. Super. 234, 156 A.2d

373 (1959), for the principle that, "[w]here one deals with an agent who acts within the scope of his authority and reveals his principal, the principal alone is liable for a breach of the contract." 191 Pa. Super. at 236, 156 A.2d at 374. Because Red Bell knew that Buchanan and Silverang were acting as GSC's agent, they argue, they are protected from liability.

Under Pennsylvania law, "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." *Cosmas v. Bloomingdales Bros. Inc.,* 442 Pa. Super. 476, 487, 660 A.2d 83, 88 (1995). See also, *Eckert v. Merchants Shipbuilding Corp.,* 280 Pa. 340, 347, 124 A. 477, 480 (1924) ("[t]hat a defendant was an agent acting for another is no defense in a suit to recover for his own or his servant's torts"). Thus, neither defendant is shielded from tort liability due to its relationship with GSC.

Furthermore, Buchanan's argument on the breach of contract claim ignores the defendants' additional role as Red Bell's counsel. An agent's liability for breach of contract is limited only where "an agent for a disclosed principal is not a party to the contract." *Perlman,* 191 Pa. Super. at 236, 156 A.2d at 374. Here, the defendants are being sued in their capacity as Red Bell's counsel not GSC's agent. In addition, Buchanan is a party to the engagement letter, and Red Bell alleges that Buchanan breached the engagement letter through a litany of tortious acts. Red Bell's claims against Buchanan, therefore, must be allowed to stand.

While the specific allegations against Silverang allow the tort counts against him to proceed, Red Bell

has not pled any contract to which Silverang is a party. In this respect, the *Perlman* language applies and protects Silverang, an agent of Buchanan,[12] from liability. As a result, the breach of contract claim cannot continue and must be stricken as to him.

## CONCLUSION

Because Silverang is not a signatory to any contract with Red Bell, the breach of contract claim against him is stricken. The balance of the complaint is legally sufficient and adequately specific, and the objections are overruled.

This court will enter a contemporaneous order consistent with this opinion.

## ORDER

And now, March 13, 2001, upon consideration of the preliminary objections of defendants, Buchanan Ingersoll P.C. and Kevin J. Silverang Esquire to the complaint of plaintiff, Red Bell Brewing Company, and plaintiff's opposition, the respective memoranda, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that:

(1) Kevin J. Silverang Esquire's objections to the plaintiff's breach of contract count is sustained, and that count is stricken as to Silverang, only;

(2) The remaining objections are overruled; and

(3) Defendants are directed to file an answer within 20 days of the date of entry of this order.

---

12. The complaint alleges that Silverang, "at all relevant times, was engaged in the practice of law as a partner, member, shareholder, employee and/or agent of Buchanan." Complaint at ¶3.