J. A19012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

EILEEN MCGUIRE,                          :     IN THE SUPERIOR COURT OF
                                                       :          PENNSYLVANIA
                              Appellant   :
                                                       :
                     v.                          :
                                                       :
DONALD RUSSO, D/B/A LAW OFFICES  :
OF DONALD P. RUSSO, ESQUIRE,       :
DEIRDRE KAMBER TODD, D/B/A          :
FITZPATRICK LENTZ & BUBBA P.C.     :          No. 2603 EDA 2015
D/B/A KAMBER LAW GROUP, P.C., AND :
FITZPATRICK LENTZ & BUBBA P.C.     :


Appeal from the Order Dated July 15, 2015,
in the Court of Common Pleas of Lehigh County
Civil Division at No. 2014-C-3564


BEFORE:  FORD ELLIOTT, P.J.E., OTT AND FITZGERALD,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED NOVEMBER 22, 2016**

Eileen McGuire, plaintiff in the court below, appeals from the order of

July 15, 2015, sustaining defendants/appellees' preliminary objections.  We

affirm.

The trial court has summarized the history of this matter as follows:

> According to her Second Amended Complaint,
> Plaintiff is a skilled computerized tomography
> technologist who was employed by Palmerton
> Hospital in the fall of 2008 until July 2011.  She
> alleges the hospital terminated her employment
> because she refused to engage in "multiple illegal
> and unethical healthcare practices" and because of
> her age.  Second Amended Complaint, ¶ 6.  She

_____

* Former Justice specially assigned to the Superior Court.

retained Defendants, Deidre [sic] Kamber Todd, Esq. ("Attorney Todd") and the law firm of Fitzpatrick, Lentz & Bubba ("Fitzpatrick Firm") "[a]round January 2012" in order to file an employment discrimination complaint against the hospital and her former supervisor, Louis Richards ("Richards"). *Id.* ¶ 12. "Thereafter," she (not Defendants) filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC") on the basis of age discrimination. *Id.* ¶ 13.

On or about March 7, 2012, approximately three months after filing her claim with the PHRC, Attorney Todd filed an action against the hospital and Richards in the Monroe County Court of Common Pleas on March 7, 2012, for breach of contract and wrongful termination. *Id.* ¶ 15-16. Although Plaintiff seems to complain the complaint did not contain a claim for age discrimination, she also acknowledged her administrative remedies had not been exhausted. *Id.* ¶ 16-17.

Attorney Todd left the Fitzpatrick Firm "[a]round spring 2012, midway through the litigation." *Id.* ¶ 18. Plaintiff retained new counsel, Attorney Donald Russo ("Attorney Russo"), on or about July 3, 2012. The hospital and Richards removed the case to federal court on or about September 4, 2012.

At federal court, "[t]he case was dismissed without prejudice and Plaintiff amended her complaint several times . . . [and] [o]n or about February 15, 2013, Plaintiff's case was dismissed with prejudice. . . ." *Id.* ¶ 24-25. After the dismissal, Attorney Russo obtained a $7,000 settlement for Plaintiff.

In this action against Attorneys Russo and Todd, and their law firms, including the Fitzpatrick Firm, Plaintiff alleges "[b]ut for Defendants' . . . malpractice, Plaintiff would not have been in the weakened position that forced her to accept a

> settlement amount significantly lower than what Plaintiff would have received from meritorious litigation." ***Id.*** ¶ 29.

Order, 7/15/15 at 1-2 n.1.

Appellees' preliminary objections in the nature of a demurrer were sustained by order filed July 15, 2015. This timely appeal followed. Appellant complied with Pa.R.A.P. 1925(b), and the trial court filed an opinion.

The standard of review we apply when considering a trial court's order sustaining preliminary objections is well settled:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.***, 107 A.3d 114, 118 (Pa.Super. 2014).

The trial court dismissed appellant's legal malpractice claims on the basis of ***Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick***, 587 A.2d 1346 (Pa. 1991). In that seminal case, the Muhammads brought a medical malpractice claim following the death of their infant son during a surgical procedure. ***Id.*** at 1347. After the case settled for $26,500, the Muhammads filed a legal malpractice action against the attorneys who had represented them in the underlying medical malpractice case. ***Id.*** at 1347-1348. The Pennsylvania Supreme Court in ***Muhammad*** held that absent specific allegations of fraud, a client who agrees to settle a case cannot subsequently bring a legal malpractice action against his attorney:

> Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

***Id.*** at 1348. The ***Muhammad*** court's decision was based on the strong and historical public policy of encouraging settlements:

> The primary reason we decide today to disallow negligence or breach of contract suits against lawyers after a settlement has been negotiated by the attorneys and accepted by the clients is that to allow them will create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for

something that "could have been done, but was not." We refuse to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases. A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them.

*Id.* at 1349. The **Muhammad** court declared that, "henceforth we should view 'litigation concerning litigation' cases with a jaundiced eye." *Id.* at 1350. Absent a specific allegation of fraud, an agreement to settle forecloses the ability of a dissatisfied litigant to file suit against his attorney:

We do believe, however, there must be redress for the plaintiff who has been **fraudulently induced** into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement. "One may not . . . induce another to contract by fraudulent misrepresentations." *College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 115, 360 A.2d 200, 206 (1976).

*Id.* at 1351 (emphasis in original).

In the event a litigant believes he has been fraudulently induced into settling, he has the right to file a suit, **alleging with specificity** the acts that he claims are fraudulent. If his allegations meet the standard of specificity required by Pa.R.C.P. 1019(b), then he will be allowed to proceed. In the event those allegations do not meet that standard of specificity, then the case will be dismissed upon the filing of preliminary objections.

*Id.* at 1352 (emphasis in original).[1]

Appellant does not allege that she was fraudulently induced into signing the settlement agreement. Accepting appellant's allegations as true, her attorneys failed to include a claim for age discrimination and also failed to exhaust appellant's administrative remedies and obtain a "right to sue" letter from the EEOC. These allegations go to negligence and breach of contract, not actual fraud. Even if appellees' negligence resulted in appellant accepting a "low-ball" offer, there is no allegation that appellees engaged in fraudulent conduct. Therefore, **Muhammad** applies to bar the action.

Appellant relies on a series of cases distinguishing **Muhammad** on the basis that the attorneys' alleged negligence did not lie in their professional judgment in negotiating a settlement, but rather in their failure to advise their client of well-established principles of law and the consequences of entering into a legal agreement. In **McMahon v. Shea**, 688 A.2d 1179 (Pa. 1997), for example, Robert McMahon and his wife Janet entered into a written settlement agreement providing for weekly child support and alimony payments. **Id.** at 1180. These payments were to continue until the youngest living child reached age 21, was emancipated, or finished college,

---

[1] Under Rule 1019, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019. "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." **Feingold v. Hendrzak**, 15 A.3d 937, 942 (Pa.Super. 2011).

whichever occurred last. *Id.* Upon advice of counsel, the parties entered into a stipulation wherein the written agreements would be incorporated but not merged into the final divorce decree. *Id.* Two months after the divorce decree was entered, Mrs. McMahon remarried. *Id.* Mr. McMahon filed a petition to terminate alimony, which was denied on the grounds that the parties' agreement had survived the divorce decree.[2] *Id.*

Mr. McMahon filed a legal malpractice action against his attorneys, alleging that they negligently failed to merge his alimony agreement with the final divorce decree, resulting in damages including alimony payments to his former wife after her remarriage. *Id.* at 1180-1181. Our supreme court distinguished *Muhammad* on the basis that Mr. McMahon was not simply dissatisfied with his settlement valuation; rather, he was alleging a failure to administer accurate advice about well-established principles of law in settling a case:

---

[2]      The Divorce Code provides that the payment of alimony shall terminate upon the payee-spouse's remarriage. *See* 23 Pa.C.S.A. § 3701(e). Where, however, the parties enter into an alimony agreement that is not merged with a subsequent divorce decree, then that agreement survives the divorce decree, thus obligating the parties to the agreement to honor the agreement after the divorce decree has been entered. *See McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992) (*en banc*).

*Banks v. Jerome Taylor & Assoc.*, 700 A.2d 1329, 1332 n.1 (Pa.Super. 1997), *appeal denied*, 723 A.2d 668 (1998).

> The laudable purpose of reducing litigation and encouraging finality would not be served by precluding the instant action. Mr. McMahon merely seeks redress for his attorneys' alleged negligence in failing to advise him as to the controlling law applicable to a contract.

*Id.* at 1182. The court in **McMahon** concluded that the longstanding public policy favoring settlements had no application to the facts of that case, where Mr. McMahon was not attacking the value that his attorneys placed on his case:

> Instead, Mr. McMahon is contending that his counsel failed to advise him as to the possible consequences of entering into a legal agreement. The fact that the legal document at issue had the effect of settling a case should not exempt his attorneys from liability.

*Id.* at 1182.[3]

In **White v. Kreithen**, 644 A.2d 1262 (Pa.Super. 1994), **appeal denied**, 652 A.2d 1324 (Pa. 1994), the plaintiff in a medical malpractice case discharged her attorneys, allegedly because of their negligence in handling her case and because they were not prepared for trial. **Id.** at 1263. The plaintiff sought to retain other counsel but could not because her attorneys refused to transfer the file and demanded unreasonable "referral fees" from proposed new counsel. **Id.** The case was placed on the trial list, and the plaintiff still had not obtained new counsel. At a conference

---

[3] **McMahon** was decided by an evenly split six-member court. Justice Cappy, joined by Justices Castille and Newman, filed a concurring Opinion, rejecting the majority's attempt to limit **Muhammad** to its facts and emphasizing the continuing validity of **Muhammad**.

before the Calendar Judge at which the plaintiff appeared **pro se**, the Calendar Judge recommended settlement in the amount of $150,000 and stipulated that if the plaintiff did not accept his recommendation, she would be forced to immediate trial unless the defendants refused to agree. **Id.** The plaintiff alleged that her medical expenses alone exceeded $150,000. **Id.** The medical malpractice defendants agreed to pay the figure recommended by the Calendar Judge, at which point the plaintiff had no choice but to accept the figure. **Id.**

This court concluded that the subsequent legal malpractice suit was not barred as a result of the plaintiff's settlement of the medical malpractice action, distinguishing **Muhammad**:

> It is thus apparent that **Muhammad** does not control the present case since the settlement in the underlying action was not a settlement negotiated by counsel for appellant. Rather, after appellant discharged appellees, allegedly for failure to properly investigate and prepare her case for trial, appellant was forced, due to her inability to retain counsel, to accept the settlement figure proposed by the judge. Moreover and quite importantly, none of the motivating reasons for the Supreme Court decision in **Muhammad**, **supra**, would be achieved by finding the instant malpractice action barred, since appellees did not participate in the settlement, and appellant was prevented-allegedly as a result of appellees' conduct-from questioning "before settlement" whether the terms of the settlement were advantageous.

*Id.* at 1265. Therefore, critical to this court's decision in *White* was the fact that the defendants in the legal malpractice action did not negotiate the settlement in the underlying medical malpractice action.

Similarly, in the recent case of *Kilmer v. Sposito*, ___ A.3d ___, 2016 WL 3612406 (Pa.Super. July 1, 2016), the plaintiff's former attorney represented her in matters related to settling the estate of her late husband. *Id.* at *1. According to the complaint, he negligently advised the plaintiff to file an election to take against her husband's will under 20 Pa.C.S.A. § 2203, which would entitle her to one-third of her husband's estate. *Id.* In fact, under 20 Pa.C.S.A. §§ 2507 and 2102, she was entitled to one-half of the estate as a surviving spouse who had married the testator after he made his will. *Id.* The plaintiff followed her attorney's advice and filed an election to take against the will, effectively reducing her share of the estate from one-half to one-third. *Id.*

Subsequently, the plaintiff terminated her attorney's services and retained new counsel to challenge the validity of her election. *Id.* Ultimately, she reached a settlement with the estate whereby she agreed to accept a 41.5% share of her late husband's estate. *Id.* The plaintiff then filed a legal malpractice action against her former attorney, which was dismissed on the basis of *Muhammad*. On appeal, this court reversed, distinguishing *Muhammad* where the plaintiff was challenging her former attorney's failure to advise her correctly on the law pertaining to her interest

in her late husband's estate. *Id.* at *4. Following *McMahon*, in which all six justices drew a distinction between challenging an attorney's professional judgment regarding settlement and challenging an attorney's failure to advise a client of well-established principles of law and the impact of a written agreement, this court in *Kilmer* stated:

> We apply the same rationale herein, for barring Appellant from seeking to hold Appellee accountable for allegedly flawed legal advice on an underlying matter essential to her inheritance as a surviving spouse would not advance the interests of finality in settlements. Appellant alleged in her complaint that Appellee's negligence and breach of contract consisted of his failure to advise her properly on the consequences of exercising her right of election to take against the will. Appellant relied upon Appellee's advice to her ostensible detriment when she authorized Appellee to file her election with the orphan's court, a filing that would reduce Appellant's legal interest in her husband's estate by 17 2/3 if accepted by the court. She and new counsel challenged the validity of her election in a subsequent proceeding, but the prospects of prevailing in that matter were uncertain at best, driving them to the reasonable position of accepting a settlement that allowed her to make what was, indisputably, only a partial recovery of what she lost by virtue of the advice rendered by Appellee.

*Id.* at *4 (footnote omitted). As in *White*, the defendant attorney in *Kilmer* did not negotiate any settlement on his client's behalf. Rather, he administered plainly erroneous legal advice.

In the case *sub judice*, appellant agreed to settle her case for $7,000 after her third amended complaint was dismissed in federal court. Appellant does not allege that she was fraudulently induced into accepting the

settlement, or that appellees misrepresented the terms of the agreement. Nor does appellant allege that appellees gave her wrong advice concerning well-established principles of law, or failed to explain the impact of a legal document. **See Banks**, 700 A.2d at 1332 (the **Muhammad** rule does not bar a client from suing his counsel for negligence where the settlement agreement is legally deficient or where counsel fails to explain the effect of a legal document) (citations omitted). Here, appellant alleges, **inter alia**, that appellees failed to include all pertinent facts in her first complaint when the lawsuit was initiated, failed to properly amend the complaint, failed to exhaust her administrative remedies, and failed to respond to her questions regarding settlement of her case. (Second amended complaint, 4/10/15 at ¶ 31; RR Vol. I at 72.) Since appellant failed to specifically plead fraudulent inducement or that the settlement agreement itself was somehow legally deficient, the **Muhammad** rule applies, and appellant is barred from filing suit for legal malpractice. It appears that appellant is dissatisfied with her decision to settle and feels that more competent counsel would have been able to get her a "better deal"; this is precisely the sort of inefficacious litigation that the court in **Muhammad** was trying to foreclose. **See Muhammad**, 587 A.2d at 1350 ("Particularly troublesome to the efficacy of the courts are these 'second bite' cases; they require twice the resources as a single case, yet resolve only a single litigant's claims--thus denying access

to the courts to litigants who have never had a single resolution of their dispute.").[4]

In her reply brief, appellant complains that **Muhammad** has been heavily criticized and other jurisdictions, including New Jersey, have refused to follow it. (Appellant's reply brief at 4.) It is well established that this court is bound by decisions of our supreme court unless they are overturned by that court. **See Marks v. Nationwide Ins. Co.**, 762 A.2d 1098, 1101 (Pa.Super. 2000) (this court continues to follow controlling precedent as long as the decision has not been overturned by our supreme court), **appeal denied**, 788 A.2d 381 (Pa. 2001). Appellant wrongly characterizes **McMahon** as limiting **Muhammad** to the facts of that case. (Appellant's brief at 19.) As stated above, **McMahon** was the product of an equally divided, six-member supreme court. In point of fact, the three-member "minority" concurred in the result, but specifically objected to limiting **Muhammad** to its facts. **McMahon**, 688 A.2d at 1182-1183. Consequently, **McMahon** did not serve to limit **Muhammad** to its facts, and **Muhammad** remains as controlling precedent until a true majority of the supreme court rules otherwise. The trial court did not err in sustaining

---

[4] At any rate, clearly appellant cannot maintain suit against the Todd and Fitzpatrick defendants where they were replaced in 2012. Appellant hired appellee Russo who filed several amended complaints on her behalf, including an age discrimination claim. As the trial court observed, neither Todd nor the Fitzpatrick firm represented appellant when she negotiated and accepted the settlement agreement. (Trial court opinion, 10/9/15 at 5.)

appellees' preliminary objections and dismissing appellant's complaint with prejudice where she failed to allege that the settlement agreement was legally deficient, that she was fraudulently induced to settle, and/or that the consequences of the legal agreement were not fully explained to her.

For these reasons, it is unnecessary to address appellant's other claim raised on appeal, that she was entitled to attorneys' fees.[5] Furthermore, "The settled law of this Commonwealth is that attorneys' fees are recoverable from an adverse party to a cause only when provided for by statute, or when clearly agreed to by the parties." *J.C. Snavely & Sons, Inc. v. Web M & E, Inc.*, 594 A.2d 333, 337 (Pa.Super. 1991), *appeal denied*, 602 A.2d 860 (Pa. 1991), quoting *Fidelity-Philadelphia Trust Co. v. Philadelphia Trans. Co.*, 173 A.2d 109, 113 (Pa. 1961). Instantly, appellant has cited no statute or agreement between the parties that would entitle her to attorneys' fees.

Order affirmed.


Ott, J. joins this Memorandum.

Fitzgerald, J. notes dissent.

---

[5] Appellant has abandoned her claims for punitive damages and breach of a fiduciary duty.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/22/2016</u>