2015 PA Super 62

| PHILLIP J. SILVAGNI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEFFREY S. SHORR, ESQUIRE, JOHN A. LORD, ESQUIRE, DASHEVSKY, HORWITZ, KUHN & NOVELLO, P.C., SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C. | |
| Appellees | No. 2566 EDA 2013 |

Appeal from the Order August 6, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 1386

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

OPINION BY LAZARUS, J.:                                    **FILED MARCH 27, 2015**

Phillip J. Silvagni appeals from the order entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Jeffrey S. Shorr, Esquire, and the law firm of Dashevsky, Horwitz, Kuhn & Novello, P.C. (hereinafter "Defendants").  We affirm.

On October 27, 2011, Silvagni filed a complaint against Defendants alleging legal malpractice in the handling of his workers' compensation claim.[1]  In the legal malpractice action, Silvagni claimed Defendants gave

---

[1] While in the employ of Jersey Shore Steel Company, Silvagni was injured when an overhead crane fell on him. He retained Defendants to represent

*(Footnote Continued Next Page)*

him incorrect legal advice that ultimately led to a compromise and release. Silvagni claims that but for that incorrect legal advice, he would not have agreed to the terms of the settlement.

Defendants filed preliminary objections, which the trial court denied. On February 29, 2012, Silvagni filed a second amended complaint. On May 17, 2013, the parties entered into a stipulation to dismiss Counts I and III of the complaint (Professional Negligence/Malpractice and Breach of Fiduciary Duty). On June 6, 2013 the trial court approved the stipulation, and Silvagni's complaint continued with the remaining Count II (Breach of Contract/Covenant of Good Faith and Fair Dealing). On May 31, 2013, Defendants filed a motion for summary judgment, which the Honorable John M. Younge granted. Thereafter, Silvagni filed this appeal, raising two issues:

1. Did the trial court commit an error of law in its grant of summary judgment in its application of the **Muhammad**[2] doctrine's general prohibition against "settling and suing" when the necessary diminished underlying settlement was procured by underlying Defendants' legal and not judgment errors and otherwise, likewise not "voluntarily" entered?

_(Footnote Continued)_ _____

him both in the Workers' Compensation action and in a separate third-party action against the crane manufacturer and other companies. The third-party action was referred to the law firm of Saltz, Mongeluzzi, Barrett & Bendesky, P.C. ("the Saltz Firm"). That action was settled on March 29, 2009, a few months after Silvagni signed the Compromise and Release in the Workers' Compensation action.

[2] **Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,** 587 A.2d 1346 (Pa. 1991).

2. Did the trial court commit an error of law in its grant of summary judgment per the **Muhammad** doctrine when that doctrine had previously been adjudicated upon preliminary objections as inapplicable and no material facts had changed in the interim?

Because Silvagni's claims are barred under the doctrine espoused in **Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick**, 587 A.2d 1346 (Pa. 1991), we agree with Judge Younge's order granting summary judgment in Defendants' favor.

> Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> * * *
>
> Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

**Sokolsky v. Eidelman**, 93 A.3d 858, 861–62 (Pa. Super. 2014) (quotation marks and citations omitted).

In **Muhammad**, plaintiffs filed a legal malpractice action against defendant law firm as a result of defendant's representation of plaintiffs in a

- 3 -

medical malpractice lawsuit following the death of plaintiffs' child. Defendant law firm negotiated a settlement of the medical malpractice case. Plaintiffs verbally accepted the settlement offer. Thereafter, plaintiffs changed their minds about the settlement before signing a written accord. Defendant law firm filed a Rule to Show Cause why the settlement agreement should not be enforced. After an evidentiary hearing, the trial court enforced the agreement. The court ordered the defendants in the medical malpractice case to pay the settlement funds and instructed the prothonotary to mark the case settled. Plaintiffs hired new counsel, appealed the order, and this Court affirmed. **_Muhammad v. Childrens Hospital of Pittsburgh_**, 487 A.2d 443 (Pa. Super. 1984) (unpublished memorandum opinion).

Thereafter, plaintiffs filed a legal malpractice case against the law firm that had negotiated the medical-malpractice settlement. The legal malpractice case was dismissed, and our Supreme Court affirmed that dismissal, stating:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, **_we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed_,** unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

***Muhammad***, 587 A.2d at 1348 (emphasis added).  The Court further stated:

> [W]e foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system. We do believe, however, there must be redress for the plaintiff who has been fraudulently induced into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement.

***Id***. at 1351.

Silvagni claims that the trial court improperly applied the ***Muhammad*** doctrine because he did not enter into the settlement voluntarily.  Silvagni's claim is not supported in the record.

Silvagni executed a Compromise and Release Agreement on December 16, 2008, which included the following certification:  "I have been represented by an attorney of my own choosing during this case.  My attorney has explained to me the content of this agreement and the effects upon my rights."  ***See*** Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act, 12/16/08, ¶ 4.

Further, prior to approving the settlement, Judge Karl Baldys presided over a colloquy conducted by Silvagni's attorney, Jeffrey S. Shorr, Esq.:

> Q: Mr. Silvagni, you were employed by Jersey Shore Steel as of September 30, 2005, is that correct?

A: Yes.

Q: And on that date you suffered multiple injuries as a result of a crane collapse, is that correct?

A: Yes.

Q: And you received medical treatment for the injuries that you had, including fractures and injuries to you neck and back, is that correct?

A: Yes.

Q: And you continue to receive treatment for those problems, is that correct?

A: Yes.

Q: Now since the work injury you had received $358.00 a week in worker's compensation benefits, is that correct?

A: Yes.

Q: And you have before you the Compromise and Release Agreement, which is the settlement agreement, is that correct?

A: Yes, I do.

Q: Now I'm going to ask you to go to the "Employee's Certification" page. Is that your signature above the "Employee' Signature" line?

A: Yes, it is.

Q: And is that your initials in the first part of Paragraph No.4?

A: Yes, it is.

Q: Before today's hearing did you have an opportunity to read this document?

A: Yes, I have.

Q: Did I explain each provision of the agreement to you?

A: Yes, you did.

Q: Do you understand each provision of the agreement?

A: Yes.

Q: Do you understand that if Judge Baldys approves this agreement you will receive a lump sum of $60,000.00, from which a 20 percent attorney's fee will be deducted and paid directly to the firm that I work for, do you understand that?

A: Yes.

Q: And do you understand that you will receive the sum of $48,000.00?

A: Yes.

Q: **Do you understand that in return for that you will not be entitled to any additional wage benefits, medical benefits, specific loss benefits, or any other benefits under the Workers' Compensation Act for your work injury of September 30, 2005?**

A: **Yes**.

Q: Do you understand that if your condition worsens and you cannot work, or you need additional medical treatment, that the insurance company or Jersey Shore Steel Company will not be responsible to pay for that wage loss or medical treatment?

A: Yes.

Q: Do you understand that it will be your own personal responsibility to pay for any additional medical treatment after today?

A: Yes.

Q: Do you understand that if you didn't want to settle this case you would have the right to have Judge Baldys decide the case, in which case if he found in your favor you would continue to receive your weekly wage benefits as well as your medical expenses paid for from the insurance company and the Employer?

A: Yes.

Q: Do you understand that if you didn't resolve this matter Judge Baldys could decide the case, and if he decided against you, you would continue to have your medical expenses paid

until some Judge terminates those benefits, do you understand that?

A: Yes.

Q: By entering into this agreement you're giving up your right to have Judge Baldys decide the case, do you understand that?

A: Yes.

Q: Are you currently under the influence of any types of substances that would affect your ability to understand what you're doing today?

A: No.

Q: Has anybody promised you anything other than what is set forth in the agreement in order to encourage you to sign the agreement?

A: No.

Q: You are doing this of your own free will?

A: Yes.

Q: Have you been satisfied with my firm's representation of your interests in this matter?

A: Yes.

Q: Did I explain to you that should Judge Baldys approve this agreement he is going to circulate a Decision, from which you would have twenty days to appeal that Decision?

A: Yes.

Q: Did I explain to you that you could choose to waive that appeal, and what the consequences of waiving that appeal right would be?

A: Yes.

Q: Do you wish to waive that appeal?

A: Yes.

N.T. Compromise and Release Hearing, 12/16/08, at 5-8 (emphasis added).

Counsel for the Jersey Shore Steel Company, Silvagni's employer, cross-examined Silvagni with respect to the employer's and insurance company's subrogation interest pertaining to the third-party lawsuit. Silvagni affirmed that he understood the subrogation interests, that he understood the effect the agreement had on his rights under the Workers' Compensation Act, that he had no questions about it, and that he wanted Judge Baldys to approve the agreement. *Id*. at 10-11.

Finally, Judge Baldys asked Silvagni if he felt he "had enough time to think about this decision[,]" to which Silvagni replied, "Yes." Judge Baldys also stated: "Am I correct this was a case which had been mediated and there was a prior mediation conference and quite a bit of negotiation?" Silvagni answered in the affirmative to that question as well. *Id*. at 10.

In light of the foregoing, we find Silvagni's claim fails. Silvagni's assertion that he would never have settled his worker's compensation claim had he understood that it would terminate his medical coverage and wage benefits is contradicted by the record. Essentially, Silvagni claims that the legal advice he received, that an adverse workers' compensation decision could adversely affect his third-party claim, or the "interplay" between the workers' compensation and third-party matters, was negligent, and this caused an unknowing and involuntary settlement in the workers' compensation matter. Silvagni claims Defendant Schorr, who represented him in the workers' compensation matter, advised him that as a result of his

catastrophic injuries, the third-party action was "of such great value" that "the natural progression of the case" is to settle the workers' compensation matter "when there's a third party case." **See** Silvagni Deposition, 1/30/13, at 147-48.

During the colloquy, however, Silvagni acknowledged, under oath, that he understood that in return for the settlement he would no longer receive medical benefits or any other benefits under the Workers' Compensation Act. N.T. Compromise and Release Hearing, **supra** at 6-7. Counsel engaged Silvagni in a thorough colloquy, advising him of the consequences of the settlement. The colloquy included questions from opposing counsel as well as Judge Baldys. There is no indication that Silvagni's assent to the Compromise and Release Agreement was involuntary. Silvagni is thus barred from filing an action in negligence against Defendants. **See Muhammad**, **supra** (when client has signed off on final settlement agreement, absent fraud, client may not later sue his attorney because he is dissatisfied with settlement amount). **See also Banks v. Jerome Taylor & Assoc**., 700 A.2d 1329, 1332 (Pa. Super. 1997) (where dissatisfied litigant merely wishes to second guess decision to settle due to speculation he may have been able to "get a better deal," **Muhammad** rule applies to bar litigant from suing counsel for negligence). **Compare Martos v. Concilio**, 629 A.2d 1037 (Pa. Super. 1993) (client displeased with results of settlement agreement could not sue attorney for malpractice absent

allegations of fraudulent inducement) *with McMahon v. Shea*, 688 A.2d 1179 (Pa. 1997) (holding *Muhammad* rule did not apply to divorce settlement where counsel allegedly failed to advise client of legal ramification of settlement) *and Collas v. Garnick*, 624 A.2d 117 (Pa. Super. 1993) (counsel who negligently advised personal injury clients that signing general release did not bar future lawsuits against other possible tortfeasors could be liable in negligence).

Unless Silvagni had specifically pled, and could prove, Defendants fraudulently induced him into signing the Compromise and Release Agreement,[3] or he could prove that Defendants failed to explain the effect of that settlement, or that the settlement was somehow legally deficient, Silvagni is barred from maintaining an action in negligence against Defendants. Viewing the record in the light most favorable to Silvagni, and resolving all doubts as to whether there exists a genuine issue of material fact against Defendants as the moving party, we conclude that it is clear that Defendants are entitled to judgment as a matter of law. We find no abuse of discretion or error of law. *Sokolsky*, *supra*.

Next, Silvagni argues that the trial court committed an error of law in granting summary judgment under the *Muhammad* doctrine when the trial court had previously denied Defendants' preliminary objections. This claim,

---

[3] Pa.R.C.P. 1019(b) states: "Averments of fraud or mistake shall be averred with particularity."

too, is meritless. Preliminary objections were filed in January 2012, and Judge Marc Bernstein overruled them in June 2012. Summary judgment was granted by Judge Younge more than a year and a half later, after Silvagni's deposition. The motions differ in kind, and a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. ***See Goldey v. Trustees of Univ. of Pennsylvania***, 675 A.2d 264, 267 (Pa. 1996). ***See also Rosenfield v. Pennsylvania Auto. Ins. Plan***, 636 A.2d 1138 (Pa. Super. 1994) (when reviewing preliminary objections, court looks to pleadings, but in considering motion for summary judgment court weighs pleadings, depositions, answers to interrogatories, admissions and affidavits; there is no reason to fail to grant summary judgment if record warrants such action).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2015