J-A04022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN F. CONLEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WILLIAM E. STOCKEY AND STOCKEY AND KELLY, JOINTLY AND SEVERALLY, | |
| Appellees | No. 548 WDA 2015 |

Appeal from the Order February 26, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 09-22371

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 26, 2016**

John F. Conley appeals from the order entered February 26, 2015, which granted summary judgment to William E. Stockey and Stockey & Kelly (collectively, Stockey) in this legal malpractice action.  We affirm.

In 2005, Jeffrey A. Butya approached Appellant, seeking a loan of $100,000.[1]  Appellant and Mr. Butya both had been represented by Stockey previously, and the three of them knew each other well.[2]  Appellant trusted

_____

[1] We derive the factual background to this case from Appellant's deposition, attached to his response to Stockey's motion for summary judgment.  *See* Response, 01/02/2015, Exhibit A.

[2] Stockey represented Appellant previously in various collection efforts and real estate issues.

Stockey. Thus, Mr. Butya suggested that Stockey could facilitate the loan transaction.

In September 2005, Appellant, Mr. Butya, and Stockey met to discuss the potential loan. In addition, Appellant and Stockey discussed the potential loan during at least one phone conversation. However, Appellant could not recall whether Stockey offered any advice regarding the potential loan. As a result of these conversations, and as Mr. Butya continued to owe Appellant money from a previous loan, it was determined that a new loan would be formalized and would incorporate the pre-existing debt as well.

In October 2005, Appellant and Mr. Butya agreed to terms in a formal closing whereupon Appellant loaned $150,000 to Mr. Butya.[3] The loan was secured purportedly by a mortgage to real property owned by Mr. Butya's brother, Brian Butya. However, at the closing, Appellant signed a waiver, acknowledging expressly that the property was subject to foreclosure proceedings that may render the loan unsecured. *See* Waiver, 10/20/2005.

Shortly after closing, Mr. Butya defaulted on the loan. Appellant obtained a judgment, which was affirmed by this Court. *See Conley v. Butya*, 62 A.3d 463 (Pa. Super. 2012) (unpublished memorandum).

_____

[3] Although the parties signed a note suggesting that Appellant loaned $150,000 to Mr. Butya, in fact, Appellant only provided $100,000. Mr. Butya also owed an additional $12,000 to Appellant from a previous loan.

Attempts to collect on this judgment have been unsuccessful.  *See* Second Amended Complaint, 04/10/2013, at ¶ 38.

The documents for the 2005 loan transaction were drafted by Attorney Michael Carr, Esq., who also attended the October 2005 closing.  Appellant presumed that Stockey had reviewed all of the documents.  However, Stockey was neither present at the closing, nor did he review or discuss the documents with Appellant prior to the closing.  In addition, Stockey never billed Appellant for any legal services, and Appellant never paid Stockey any legal fees.

Appellant commenced this action by writ of summons in December 2009.  Appellant filed a complaint in October 2010, claiming professional negligence and breach of contract.  Stockey filed preliminary objections; Appellant filed an amended complaint.  Following a second round of preliminary objections, this action was stayed pending resolution of Appellant's claims against Mr. Butya.  In April 2013, Appellant filed a second amended complaint.  Again, Stockey filed preliminary objections, resulting in the dismissal of Appellant's contract claim.  In November 2012, Stockey filed a motion for summary judgment.  Appellant timely responded.  Following argument, the trial court granted Stockey's motion for summary judgment and dismissed Appellant's complaint.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a responsive opinion.

Appellant raises the following issues:

[1.] Whether the trial court erred in granting summary judgment to [Stockey] on the basis of credibility determinations[;]

[2.] Whether the trial court erred in granting summary judgment where material issues of fact exist[; and]

[3.] Whether the trial [c]ourt erred in ruling that an attorney-client relationship could not exist absent a fee agreement between Appellant and [Stockey].

Appellant's Brief at 2.

Although Appellant purports to raise three issues before this Court, his brief presents two, distinct arguments. **See** Appellant's Brief at i, 9, and 14. First, according to Appellant, the trial court impermissibly relied upon deposition testimony of Attorney Carr, who was deposed on behalf of Stockey, thus violating the **Nanty-Glo** Rule. **See** Appellant's Brief at 14-17.[4] Second, Appellant suggests that he proffered sufficient evidence to establish that an attorney-client relationship existed between Appellant and Shockey. **Id.** at 9-14. Technically, Appellant's brief does not conform to Rule 2119 of the Pennsylvania Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Moreover, Appellant presents his arguments in

_____

[4] The **Nanty-Glo** Rule precludes summary judgment based solely upon testimonial evidence of the moving party or its witnesses. **See Shamis v. Moon**, 81 A.3d 962, 965 (Pa. Super. 2013); **Nanty-Glo v. American Surety Co.**, 163 A. 523 (Pa. 1932).

- 4 -

reverse order of the issues he identifies. Nevertheless, as these defects do not preclude our review, we will address his arguments.

The standard and scope of our review are as follows:

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

…

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Silvagni v. Shorr*, 113 A.3d 810, 812 (Pa. Super. 2015) (quoting *Sokolsky v. Eidelman*, 93 A.3d 858, 861–62 (Pa. Super. 2014)).

It is long settled that "summary judgment may not be entered where the moving party relies exclusively upon deposition testimony in order to establish that there is no genuine issue of material fact." *Drapeau v. Joy Techs., Inc.*, 670 A.2d 165, 167 (Pa. Super. 1996) (citing *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989); *Nanty-Glo*, 163 A. at 524). Nevertheless, we may affirm a decision "on any grounds that are

supported by the record." **Shamis**, 81 A.3d at 970 (citing **Cassel-Hess v. Hoffer**, 44 A.3d 80, 85 (Pa. Super. 2012)).

In his first issue, Appellant asserts that the trial court impermissibly "based its decision on credibility determinations." Appellant's Brief at 14. In particular, Appellant challenges the court's reliance upon the deposition testimony of Attorney Carr to refute Appellant's claim that Stockey's *current* representation was established by *previous* efforts made on Appellant's behalf:

> *More persuasive* is that Attorney Michael Carr was contacted by Attorney Stockey, told of the conflict that existed for Stockey in representing either [Appellant] or [Butya]. Attorney Michael Carr was subsequently hired by Jeffrey Butya, drafted the documents necessary to finalize the 2005 [l]oan, attended the closing and he was paid for services associated with same. Further bolstering … Stockey's claim, [Attorney] Carr testified that Stockey did not represent [Appellant] or anyone else with regard to [the] 2005 [l]oan or [c]losing.

Trial Court Opinion, 05/26/2015, at 6 (emphasis added; citing the deposition of Attorney Carr). According to Appellant, it was improper for the trial court to assess the credibility of witnesses, and this error precluded entry of summary judgment.

Appellant's argument is not persuasive. In our view, the trial court's analysis was flawed, and we disapprove of the trial court's determination that Attorney Carr's testimony was "more persuasive" than Appellant's evidence to the contrary. **See Silvagni v. Shorr**, 113 A.3d at 812 (requiring that we view the record in the light most favorable to the non-

moving party). Nevertheless, this was not the sole basis of the trial court's decision.

To the contrary, the trial court properly recognized that in order to state a claim of attorney malpractice, a plaintiff must establish:

> 1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff.

Trial Court Opinion at 5 (citing **Kituskie v. Corbman**, 714 A.2d 1027, 1029 (Pa. 1998)). Having established this framework, the trial court noted that it was undisputed that Appellant and Stockey never entered into a fee agreement regarding the 2005 loan; that Stockey never reviewed the loan documents with Appellant prior to closing; and that Appellant never paid Stockey for legal services. *Id.* at 6. Based upon this absence of evidence, the court determined that Appellant could not establish employment of Stockey. We discern no abuse of the court's discretion in this regard.[5]

In his second issue, Appellant contends the trial court erred as a matter of law when it required the existence of a fee agreement to establish an attorney-client relationship between him and Stockey. According to

_____

[5] Alternatively, the trial court also referenced Appellant's waiver, acknowledging expressly that the property was subject to foreclosure proceedings that may render the loan unsecured. It is not clear from the court's opinion why the court found this undisputed evidence significant. In our view, the waiver is irrelevant to whether Appellant employed Stockey for legal services, though it may have been probative in another context.

Appellant, there was sufficient evidence to establish an implied attorney-client relationship existed. *See* Appellant's Brief at 10. Appellant suggests that based upon their prior attorney-client relationship and, further, because Stockey wanted to secure additional work from Appellant's son, it was reasonable for him to believe that Stockey was representing him in the 2005 loan transaction. *Id.* at 13-14.

Appellant is entitled to no relief. First, the premise of Appellant's argument is flawed. Second, mindful of our standard of review, and viewing the evidence in the light most favorable to Appellant, we conclude that he cannot establish an implied attorney-client relationship.

Following its conclusion that Appellant could not establish an express contract for legal services, the trial court examined "whether an attorney/client relationship was consummated *absent an express contract*." Trial Court Opinion at 8 (emphasis added). Thus, the trial court did *not* require Appellant to produce evidence of a fee agreement. To the contrary, as recognized by the trial court, an implied relationship may be found when certain conditions are met.

> Absent an express contract, an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him.

*Kirschner v. K&L Gates LLP*, 46 A.3d 737, 748-49 (Pa. Super. 2012) (quoting *Cost v. Cost*, 677 A.2d 1250, 1254 (Pa. Super. 1996)); *see also* Trial Court Opinion at 8. Reviewing Appellant's evidence, the trial court concluded that although Appellant could establish the first two conditions, the court discerned no evidence that Stockey agreed to provide Appellant with legal assistance. *See* Trial Court Opinion at 8.

We agree with the court's conclusion. Further, we note that a plaintiff's subjective belief that an attorney represents his interests is insufficient. *See Cost*, 677 A.2d at 1254. Here, even accepting that Appellant's prior relationship with Stockey included legal representation, there is no evidence that Stockey agreed, expressly or implicitly, to represent Appellant in the 2005 loan transaction. Notably, Stockey never billed Appellant for any legal services, and Appellant never paid Stockey any legal fees. Stockey was not present at the closing, and he never reviewed the loan documents with Appellant prior to the closing. At most, Appellant's evidence demonstrates his subjective belief that Stockey represented him. Such evidence is insufficient. *Cost*. Accordingly, we discern no error of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/26/2016