J-A13006-20
J-A13007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JIBREEL TOWNSEND | : | IN THE SUPERIOR |
| | : | COURT OF |
| Appellant | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPEAR, GREENFIELD AND RICHMAN, P.C., | : | |
| AND MARK GREENFIELD, ESQUIRE AND | : | No. 2950 EDA 2019 |
| RAND SPEAR, ESQUIRE | : | |
| _____ | : | |
| JIBREEL TOWNSEND | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STUART A. RICHMAN, ESQUIRE | : | |

Appeal from the Order Entered September 6, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  001360 Sept. Term 2017,
002945 Oct. Term 2018

| | | |
|---|---|---|
| JIBREEL TOWNSEND | : | IN THE SUPERIOR |
| | : | COURT OF |
| Appellant | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPEAR, GREENFIELD AND RICHMAN, P.C., | : | |
| AND MARK GREENFIELD, ESQUIRE AND | : | No. 2955 EDA 2019 |
| RAND SPEAR, ESQUIRE | : | |
| _____ | : | |
| JIBREEL TOWNSEND | : | |
| | : | |
| Appellant | : | |

J-A13006-20
J-A13007-20

                                                   :
                                                   :
                                                   :

                v.                                        :

                                                     :
                                                     :

STUART A. RICHMAN, ESQUIRE        :

Appeal from the Order Entered September 6, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  001360 Sept. Term 2017,
002945 Oct. Term 2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:              Filed: August 13, 2020

Appellant, Jibreel Townsend, appeals at docket number 2950 EDA 2019 from the trial court's September 6, 2019 order granting summary judgment in favor of Appellees, Spear, Greenfield and Richman, P.C., Marc Greenfield, Esquire, and Rand Spear, Esquire.  In addition, Mr. Townsend appeals at docket number 2955 EDA 2019 from that same September 6, 2019 order, which also granted summary judgment in favor of Appellee, Stuart A. Richman, Esquire.[1, 2]  We affirm.

The trial court summarized the background of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We *sua sponte* consolidate these appeals pursuant to Pa.R.A.P. 513.  **See** Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

[2] We refer herein to Spear, Greenfield and Richman, P.C., Attorney Greenfield, Attorney Spear, and Attorney Richman collectively as "Defendant-Attorneys."

- 2 -

On October 8, 2011, Mr. … Townsend, age 37, was standing behind his car after he ran out of gas on Aramingo Avenue in Philadelphia…. As he reached into the trunk for a gasoline can, a Jeep Cherokee crashed into him, crushing his lower extremities.

The Jeep was owned by Dr. Harold Milstein. Dr. Milstein's daughter, Karli[e], was seated in the front passenger seat. The driver was Samuel Kemp. Mr. Kemp later testified that he fell asleep at the wheel after ingesting Xanax and Percocet given to him by Ms. … Milstein[.] In subsequent criminal proceedings, Mr. Kemp was incarcerated. Ms. Milstein was accepted into an [accelerated rehabilitative disposition (ARD)] program after [Mr.] Townsend submitted an [a]ffidavit of support on her behalf.

Mr. Townsend retained the law firm of Spear[,] Greenfield and Richman, P.C.[,] to represent him for the auto accident case. [Mr.] Townsend commenced litigation on December 10, 2012, in the Court of Common Pleas of Philadelphia. The [d]efendants named in the Complaint were Mr. Kemp and Dr. Milstein.

Allstate Insurance Company provided the insurance coverage for the Jeep. Dr. Milstein was the named insured. He had a $500,000.00 primary policy and a $2 million umbrella policy.

On September 30, 2016, the parties went to private mediation before the Honorable Diane Welsh (Ret.). Mr. Townsend testified that[,] after she met with all counsel and with representatives from Allstate, Judge Welsh met with [Mr.] Townsend. [Mr. Townsend] agreed to settle for $702,800.00. The Allstate settlement funds were allocated as follows:

$500,000.00 - Primary Policy

  200,000.00 - Umbrella Policy

    2,800.00 - Property (Mr. Townsend's truck)

$702,800.00

On October 11, 2016, [Mr.] Townsend signed a General Release. On November 18, 2016, [Mr. Townsend] signed a Settlement Agreement and Release. On December 16, 2016, [Mr. Townsend] executed a Schedule of Distribution -- which set forth his net recovery and his structured settlement payouts.

In February[] 2017, Mr. Townsend received an unsolicited letter in the mail from the law firm of Forbes Bender Paolino & DiSanti,

P.C.  It was signed by Attorney Guy N. Paolino.  The letter, dated February 2, 2017, states in pertinent part:

[]As I understand it, you have recently settled your claim arising out of a motor vehicle accident that you were involved in on October 8, 2011.  I also understand that the injuries you suffered in the accident were quite severe and that you may not have recovered all of the potential policy coverages available from Allstate Insurance Company.  It is my belief that if all of the proper parties were named as defendants in this case, your injuries would have warranted Allstate to tender all of the policy coverages available to you in the settlement of your claim.[]

Shortly thereafter[,] Mr. Townsend contacted Attorney Paolino.  In September[] 2017, the firm of Forbes Bender Paolino & DiSanti, P.C[.,] initiated this litigation against Spear[,] Greenfield and Richman, P.C., Marc Greenfield, Esquire and Rand Spear, Esquire on behalf of Mr. Townsend.  In October[] 2018, a second and similar lawsuit was filed naming Stuart A. Richman, Esquire.  The matters have been consolidated for pre-trial and trial[.]   (All [d]efendants will be referred to as "Defendant-Attorneys"….)[.]

The current litigation is grounded in professional negligence and fraud.  Mr. Townsend's [c]omplaints state that the failure of the Defendant-Attorneys to sue Karli[e] Milstein in the underlying auto case for negligent entrustment "… [limited] the applicable insurance coverage for the accident to the $500,000.00 automobile liability insurance policy and jeopardiz[ed] any coverage for the $2 million umbrella insurance policy."  [Mr.] Townsend's [c]omplaints assert that he was fraudulently induced to settle his case for an amount that was less than the "value" of his auto litigation.

All Defendant-Attorneys have filed … related [m]otions for [s]ummary [j]udgment….

Trial Court Opinion (TCO), 9/6/19, at 1-3 (internal citation omitted).

With respect to these summary judgment motions, the trial court subsequently granted summary judgment in favor of all Defendant-Attorneys, determining that Mr. Townsend's claims "are expressions of frustration and dissatisfaction with the amount of the 2016 settlement[,]" which are barred

by the rule set forth in **Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick**, 587 A.2d 1346 (Pa. 1991), and its progeny, in which our Supreme Court held that it "will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement." **See** TCO at 4-5; **Muhammad**, 587 A.2d at 1348. Additionally, the trial court concluded that, as a matter of law, Mr. Townsend did not produce sufficiently clear, precise, and convincing evidence to make out a *prima facie* case of fraudulent inducement. **See** TCO at 6-8. Accordingly, on September 6, 2019, the trial court granted summary judgment in favor of all Defendant-Attorneys and dismissed Mr. Townsend's complaints with prejudice.

On October 4, 2019, Mr. Townsend timely filed separate notices of appeal at each docket in accordance with **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) (holding that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases").[3] The trial court did not order Mr. Townsend to file

---

[3] On these notices of appeal, which were identical, Mr. Townsend listed both docket numbers. Recently, an *en banc* panel of this Court determined that "[w]e should not invalidate an otherwise timely appeal based on the inclusion of multiple docket numbers, a practice that the Rules themselves do not

- 5 -

concise statements of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b), and he did not do so.

Presently, Mr. Townsend raises the following issues for our review:

A. Did the lower court err in applying the case of **Muhammad** … under the facts of our case?

B. Did the lower court err in granting summary judgment on [Mr. Townsend's] fraudulent inducement cause of action?

C. Did the lower court err in granting summary judgment with regard to [Defendant-Attorneys'] claim in its motion that if Karlie Milstein is not covered under the Allstate Umbrella Insurance Policy pursuant to the intentional/criminal act provisions, then [Mr. Townsend] cannot prove that [Defendant-Attorneys'] alleged malpractice caused any damages?

Mr. Townsend's Brief at 6 (unnecessary capitalization omitted).[4]

At the outset, we acknowledge our standard of review for an order

granting a motion for summary judgment:

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the

_____

expressly forbid." **See Commonwealth v. Johnson**, -- A.3d --, 2020 WL 3869723, at *4 (Pa. Super. filed July 9, 2020). Accordingly, in **Johnson**, which contains similar circumstances to the case at bar, this Court explained that, "[b]ecause Johnson appealed from four docket numbers and filed four notices of appeal, Johnson has complied with **Walker**. The fact that each notice of appeal listed all four docket numbers does not invalidate his notices of appeal, and we decline to quash his appeals." **Id.** In reaching this conclusion, the **Johnson** Court overruled this Court's previous pronouncement in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), that a notice of appeal may contain only one docket number. Thus, pursuant to **Johnson**, we need not quash Mr. Townsend's appeal due to his listing both docket numbers on his separately filed notices of appeal.

[4] We have re-ordered Mr. Townsend's issues for ease of disposition.

nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

* * *

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

***Silvagni v. Shorr***, 113 A.3d 810, 812 (Pa. Super. 2015) (citation omitted).

### A.

In Mr. Townsend's first issue, he contends the trial court erred in applying **Muhammad** to determine that it precluded his cause of action for negligence/legal malpractice. **See** Mr. Townsend's Brief at 35. He claims that his "case is not one of unhappiness with the settlement as set forth in **Muhammad**[,] but rather his cause of action arises from a set of facts wherein the attorneys' negligence caused the diminished settlement by failing to name a proper party." **Id.** at 38. He argues that **Muhammad** "does not immunize attorneys from legal error upon which a settlement was causally predicated. The **Muhammad** settle[-]and[-]suit prohibition only prohibits speculative second guessing [of] the settlement valuation." **Id.** at 37.

This Court has previously summarized **Muhammad** as follows:

In **Muhammad**, plaintiffs filed a legal malpractice action against defendant law firm as a result of defendant's representation of plaintiffs in a medical malpractice lawsuit following the death of plaintiffs' child. Defendant law firm negotiated a settlement of the medical malpractice case. Plaintiffs verbally accepted the

settlement offer. Thereafter, plaintiffs changed their minds about the settlement before signing a written accord. [The defendants in the medical malpractice case] filed a Rule to Show Cause why the settlement agreement should not be enforced. After an evidentiary hearing, the trial court enforced the agreement. The court ordered the defendants in the medical malpractice case to pay the settlement funds and instructed the prothonotary to mark the case settled. Plaintiffs hired new counsel, appealed the order, and this Court affirmed. *Muhammad v. Childrens Hospital*, … 487 A.2d 443 ([Pa. Super.] 1984) (unpublished memorandum opinion).

Thereafter, plaintiffs filed a legal malpractice case against the law firm that had negotiated the medical-malpractice settlement. The legal malpractice case was dismissed, and our Supreme Court affirmed that dismissal, stating:

> This case must be resolved in light of our longstanding public policy which encourages settlements. Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable.

*Muhammad*, 587 A.2d at 1348…. The Court further stated:

> [W]e foreclose the ability of dissatisfied litigants to agree to a settlement and then file suit against their attorneys in the hope that they will recover additional monies. To permit otherwise results in unfairness to the attorneys who relied on their client's assent and unfairness to the litigants whose cases have not yet been tried. Additionally, it places an unnecessarily arduous burden on an overly taxed court system. We do believe, however, there must be redress for the plaintiff who has been fraudulently induced into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement.

*Id.* at 1351.

***Kilmer v. Sposito***, 146 A.3d 1275, 1279 (Pa. Super. 2016) (quoting

***Silvagni***, 113 A.3d at 813) (emphasis omitted).

Our Supreme Court next revisited ***Muhammad*** in its non-precedential

decision, ***McMahon v. Shea***, 688 A.2d 1179 (Pa. 1997), which this Court has

described as,

> affirm[ing] this Court's reversal of a trial court order invoking ***Muhammad*** to dismiss a legal negligence claim alleging flawed legal advice as the basis for settlement. In our *en banc* decision, we held the policy set forth in ***Muhammad*** was not applicable where the attorneys' alleged negligence lay not in the judgment regarding the amount to be accepted or paid in a settlement but, rather, in the failure to advise a client of well-established principles of law and the impact of a written agreement.[5] A six-

---

[5] Specifically, in ***McMahon***, the following occurred:

> Upon separation, Mr. and Mrs. McMahon entered into an agreement whereby Mr. McMahon agreed to pay his estranged wife alimony and child support. The only provision for termination of payment under the agreement was when the youngest child reached twenty-one, was emancipated, or finished college. After Mr. McMahon filed a complaint in divorce[,] he then entered into a stipulation, upon advice of counsel, wherein the previous agreements would be incorporated but not merged into the final divorce decree. Approximately two months after the divorce decree was entered, Mrs. McMahon was remarried. Mr. McMahon filed a motion to terminate the order requiring payment of alimony[,] which was denied. Mr. McMahon subsequently initiated suit against counsel, claiming that counsel was negligent in failing to merge the alimony agreement with the final divorce decree.[1]

> > [1] The Divorce Code provides that the payment of alimony shall terminate upon the payee-spouse's remarriage. ***See*** 23 Pa.C.S.[] § 3701(e). Where, however, the parties enter into an alimony agreement that is not merged with a subsequent divorce decree, then that agreement survives the divorce decree, thus obligating the parties to the agreement to honor the agreement after the divorce decree

member Supreme Court affirmed, but with three justices concurring in the result because they would not limit **Muhammad** to its facts as would the "majority."

Even without supplying binding precedent, **McMahon** provides helpful guidance…, for the concurrence agreed with the Opinion Announcing the Judgment of Court where it distinguished "between a challenge to an attorney's professional judgment regarding an amount to be accepted or paid in settlement of a claim, and a challenge to an attorney's failure to correctly advise his client about well established principles of law in settling a case. This is a reasonable and justifiable distinction." **McMahon**, 688 A.2d at 1183 (Cappy, J., Concurring). As such, all six members of the Court deciding the case drew a distinction between "holding an attorney accountable to inform a client about the ramifications of existing law and allowing the second guessing of an attorney's professional judgment in an attempt to obtain monies, once a settlement agreement has been reached." **Id.**

**Kilmer**, 146 A.3d at 1280.

Based on **Muhammad**, **McMahon**, and other relevant cases, this Court has extracted the following principles:

In cases wherein a dissatisfied litigant merely wishes to second guess his or her decision to settle due to speculation that he or she may have been able to secure a larger amount of money, *i.e*[,] "get a better deal[,]" the **Muhammad** rule applies so as to bar that litigant from suing his counsel for negligence. If, however, a settlement agreement is legally deficient or if an attorney fails to explain the effect of a legal document, the client may seek redress from counsel by filing a malpractice action sounding in negligence. **Compare Martos v. Concilio**, … 629 A.2d 1037 ([Pa. Super.] 1993) (client who was displeased with results of settlement agreement could not sue his attorney for malpractice absent allegations of fraudulent inducement) **with Collas v. Garnick**,

_____

has been entered. **See McMahon v. McMahon**, … 612 A.2d 1360 ([Pa. Super.] 1992) (*en banc*).

**Banks v. Jerome Taylor & Associates**, 700 A.2d 1329, 1331-32 (Pa. Super. 1997).

- 10 -

624 A.2d 117 ([Pa. Super.] 1993) (counsel who negligently advised personal injury clients that signing a general release did not bar future lawsuits against other possible tortfeasors could be liable in negligence).

**Banks**, 700 A.2d at 1332.[6]

Here, Mr. Townsend explains that "the gist of [his] legal malpractice claim is the fact that [Defendant-Attorneys] failed to name Karlie Milstein as a defendant pursuant to a negligent entrustment claim." Mr. Townsend's Brief at 36. He says that, "[s]ince [he] was unaware of any potential legal malpractice, he had no choice but to accept his attorney's advice and enter into the settlement agreement by signing the release in the underlying litigation. Mr. Townsend was unaware of the effect of not naming Karlie Milstein as a defendant[,] and that this decision jeopardized potential

---

[6] **Compare also Silvagni**, 113 A.3d at 815 (barring the plaintiff's negligence claim against his attorney pursuant to **Muhammad** where the plaintiff claimed that "the legal advice he received, that an adverse workers' compensation decision could adversely affect his third-party claim, … was negligent, and this caused an unknowing and involuntary settlement in the workers' compensation matter"); **Banks**, 700 A.2d at 1332 ("Banks has not complained that his attorneys failed to explain the legal effect of the settlement agreement nor has Banks complained that the agreement neglected to follow well settled legal principles. It is clear, therefore, that Banks is dissatisfied with the amount of his settlement and is utilizing the claim of legal malpractice as a vehicle to vent his frustration.") **with Kilmer**, 146 A.3d at 1279-80 ("[T]he **Muhammad** decision is inapposite to the present action, which focuses not on [the attorney's] professional judgment in negotiating a settlement— indeed, he was no longer [the client's] attorney when [the client] challenged the Final Accounting and ultimately settled—but on his failure to advise her correctly on the law pertaining to her interest in her late husband's estate."); **White v. Kreithen**, 644 A.2d 1262, 1265 (Pa. Super. 1994) (determining **Muhammad** rule did not preclude malpractice action where, "after [the client] discharged [her attorneys], allegedly for failure to properly investigate and prepare her case for trial, [the client] was forced, due to her inability to retain counsel, to accept the settlement figure proposed by the judge").

insurance coverage under the $2 million dollar Allstate umbrella policy." **_Id._**
at 37. He argues that, "[a]fter a settlement[,] a subsequent legal malpractice
case should not be precluded when negligence led to a diminished settlement."
**_Id._** at 37-38.

We reject this argument. This is not a case where a prior attorney's
negligence forced the client to agree to an unfavorable settlement, **_see_**
**_Kilmer_**, **_supra_**; **_White, supra_**, or a case where the attorney failed to inform
the client of well-established principles of law or the effects of a settlement,
**_see McMahon_**, **_supra; Collas_**, **_supra_**. Instead, Mr. Townsend's
negligence/legal malpractice claim appears most analogous to the
circumstances of **_Muhammad_**, where the plaintiffs — who brought a medical
malpractice action following the death of their son — alleged, _inter alia_, "a
failure to sue another hospital and drug manufacturer (arguably negligence
claims) as the basis for … fraud." **_See Muhammad_**, 587 A.2d at 1352.[7] Our
Supreme Court dismissed their complaint — which contained causes of action
for fraudulent concealment, fraudulent misrepresentation, nondisclosure, and
negligence, among other claims — observing:

> It becomes obvious that by allowing suits such as this, which
> merely "second guess" the original attorney's strategy, we would
> permit a venture into the realm of the chthonic unknown. **It is**
> **impossible to state whether a jury would have awarded**
> **more damages if a suit had been filed against another**
> **potential party or under another theory of liability.** It is

---

[7] The plaintiffs in **_Muhammad_** also alleged that their attorneys "were
negligent and in an attempt to cover up their negligence, convinced [the
plaintiffs] to agree to the settlement." **_Muhammad_**, 587 A.2d at 1352.

> indeed possible that a smaller verdict would have been reached or a defense verdict ultimately would have been rendered. Thus, sanctioning these "Monday-morning-quarterback" suits would be to permit lawsuits based on speculative harm; something with which we cannot agree.

*Id.* at 1352 n.13 (emphasis added). The Court also warned that, under a contrary rule, "[l]awyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that 'could have been done but was not.'" *Id.* at 1349.

As Mr. Townsend's claim similarly 'second guesses' the Defendant-Attorneys' strategy not to sue Karlie Milstein, and merely speculates that he would have recovered more money if she had been a party, we agree with the trial court and the Defendant-Attorneys that the **Muhammad** rule applies and precludes Mr. Townsend's negligence cause of action.[8, 9] His negligence claim is no more than an "expression[] of frustration and dissatisfaction with the amount of the 2016 settlement." TCO at 5; *see also* Defendant-Attorneys' Brief at 38

---

[8] While Mr. Townsend insists that not naming Karlie Milstein "jeopardized potential insurance coverage under the $2 million dollar Allstate umbrella policy[,]" we note that $200,000 of the settlement funds he received came from that umbrella policy. **See** Mr. Townsend's Brief at 37; TCO at 2.

[9] We briefly comment on two assertions made by Mr. Townsend in his brief. First, citing to **McMahon**, he conveys that "the analysis of **Muhammad** is limited to the facts of that case." Mr. Townsend's Brief at 36. However, as mentioned *supra*, **McMahon** is a non-precedential decision, and the Court specifically split over whether **Muhammad** should be limited to its facts. Second, to the extent Mr. Townsend argues that the Fair Share Act abrogates **Muhammad**, **see id.** at 37, we deem this argument waived for lack of meaningful analysis and development. **See, e.g.**, **In re R.D.**, 44 A.3d 657, 677 (Pa. Super. 2012) ("[A]rguments in an appellate brief not appropriately developed or lacking citation to pertinent authority are waived.") (citation omitted).

("Essentially, Mr. Townsend seeks to recover the difference between a hypothetically larger settlement or jury award and the $702,800 settlement to which Mr. Townsend agreed. This is exactly the type of legal malpractice claim prohibited by **Muhammad**."). Accordingly, no relief is due on this basis.

**B.**

In Mr. Townsend's second issue, he asserts that the trial court erred in granting summary judgment to Defendant-Attorneys on his fraudulent inducement claim, which he correctly recognizes is an exception to the **Muhammad** rule. **See** Mr. Townsend's Brief at 19. Indeed, our Supreme Court stated in **Muhammad** that,

> there must be redress for the plaintiff who has been *fraudulently induced* into agreeing to settle. It is not enough that the lawyer who negotiated the original settlement may have been negligent; rather, the party seeking to pursue a case against his lawyer after a settlement must plead, with specificity, fraud in the inducement. "One may not … induce another to contract by fraudulent misrepresentations." **College Watercolor Group, Inc. v. William H. Newbauer, Inc.**, … 360 A.2d 200, 206 ([Pa.] 1976).
>
> If the lawyer *knowingly* commits malpractice, but does not disclose the error and convinces the client to settle so as to avoid the discovery of such error, then the client's agreement was fraudulently obtained. This fraudulent inducement, however, does not alter the settlement agreement between plaintiff and defendant, since it is not the opposition who has committed the fraud, but the plaintiff's own lawyer. As such, the settlement agreement must be honored.
>
> So that the plaintiff who has been defrauded may have redress, however, we would permit him to proceed under a theory of fraud against the attorney who represented him in the original action. This holding would reflect the law as it has long existed in the Commonwealth; "[i]t is scarcely necessary at this late jurisprudential hour in the day of *stare decisis* to cite cases to certify that fraud taints with illegality and invalidity anything its

evil shadow darkens." ***Iacoponi v. Plisko***, … 195 A.2d 362, 365 ([Pa.] 1963).

***Muhammad***, 587 A.2d at 1351 (emphasis in original; footnote omitted).

Further, with respect to fraudulent inducement, this Court has articulated that:

Fraudulent conduct is defined as a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it to the damage of the victim. A person asserting fraud, therefore, must establish: (1) a misrepresentation, (2) scienter on behalf of the misrepresenter, (3) an intention by the maker that the recipient will be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient.

***Banks***, 700 A.2d at 1333 (internal quotation marks and citations omitted).

"[A] party alleging fraud has the burden of proving the same by clear and convincing evidence." ***Moser v. DeSetta***, 589 A.2d 679, 682 (Pa. 1991). This Court has explained:

"Clear and convincing evidence" requires:

that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

***In re Interest of J.M.***, 166 A.3d 408, 423 (Pa. Super. 2017) (quoting ***In re Novosielski***, 992 A.2d 89, 107 (Pa. 2010)); ***see also Delahanty v. First Pennsylvania Bank, N.A.***, 464 A.2d 1243, 1252-53 (Pa. Super. 1983) (same).

Mr. Townsend agrees that fraud must be proven by clear and convincing evidence, and contends that "the allegations set forth in [his] Complaint and Affidavit clearly set[] forth very specific evidence concerning fraudulent inducement and if accepted by a jury, meet[] the required standard of clear, precise and convincing evidence." *See* Mr. Townsend's Brief at 24. Specifically, he states:

> Mr. Townsend, in his Complaint and in his Affidavit, has set forth the following: (a) none of the attorneys at Spear Greenfield, *et al* ever informed me that they made a strategic decision not to file a lawsuit against Karlie Milstein or name her as a defendant with respect to my automobile accident case; (b) none of the attorneys at Spear Greenfield, *et al* ever informed me that there was a viable negligent entrustment cause of action against Karlie Milstein as a result of my automobile accident; (c) none of the attorneys at Spear Greenfield, *et al* ever informed that there were any issues with respect to insurance coverage in regard to my automobile accident case; (d) none of the attorneys at Spear Greenfield, *et al* ever told me that the failure to name Karlie Milstein as a defendant in my automobile accident case jeopardized insurance availability with respect to the $2 million umbrella insurance policy with Allstate; (e) [Mr.] Townsend relied on the advice of the attorneys at Spear Greenfield which did not include any of the material and relevant information identified above when entering into the settlement agreement.

*Id.* at 20-21 (citations omitted).

At Mr. Townsend's deposition, however, his testimony revealed that he remembered very little about the underlying case and the communications he had with Defendant-Attorneys. In fact, he admitted that he could not remember the specific substance of **any** of the communications he had had with anyone at Spear, Greenfield and Richman, P.C., during the underlying

case. For instance, at his deposition, Mr. Townsend testified to the following about his representation in the underlying lawsuit:

> [Defendant-Attorneys' Counsel:] I'm just trying to figure out who you communicated with?
>
> [Mr. Townsend:] It was so far back. I don't remember who I talked to. I talked to numerous people, but it was -- I knew it was a gentleman I talked to. And if they are not there, you leave a voice message. And they usually get back to you probably within two, three weeks after you leave a voice message.
>
> [Defendant-Attorneys' Counsel:] Without -- I have some of the documents that I am going to review with you, but I am just trying to get a general sense of what you remember about [the] Spear, Greenfield firm representing you in … the underlying case.
>
>    Over the course of the whole lawsuit, the underlying case, how many total people would you say that you communicated with at the Spear, Greenfield firm?
>
> [Mr. Townsend:] I spoke with Mr. Spear. I spoke to Mr. Richman, the gentleman on the phone, and then there was a lady in accounts, or an accounting lady, or someone.
>
> ***
>
> [Defendant-Attorneys' Counsel:] Okay. And over the course of the whole underlying lawsuit, could you tell us about how many times you met with anyone in person from Spear, Greenfield?
>
> [Mr. Townsend:] That, I can't remember.
>
> [Defendant-Attorneys' Counsel:] What do you remember about those communications?
>
> [Mr. Townsend:] It's so long ago. I can barely remember anything.
>
> [Defendant-Attorneys' Counsel:] Okay. How many times did you communicate directly with Rand Spear?
>
> [Mr. Townsend:] That, I'm not sure.
>
> [Defendant-Attorneys' Counsel:] Do you remember when those communications occurred?

[Mr. Townsend:] No, I don't.

[Defendant-Attorneys' Counsel:] Do you remember where they occurred?

[Mr. Townsend:] Probably, at his office.

[Defendant-Attorneys' Counsel:] Ok.  And do you remember the substance of those communications?

[Mr. Townsend:] No.

[Defendant-Attorneys' Counsel:] The same question for Marc Greenfield; do you remember where your communications occurred with Marc?

[Mr. Townsend:] At the office.  It was probably the same time that I was talking to Mr. Spear.

[Defendant-Attorneys' Counsel:] Okay.  Do you know if it was more than one time that you met with Marc in person?

[Mr. Townsend:] I believe so.

[Defendant-Attorneys' Counsel:] Okay.  And did you meet in person with anyone else from Spear, Greenfield that you can recall, other than Rand Spear, Marc Greenfield, and the gentleman who came to the hospital?

[Mr. Townsend:] That lady in accounts.  I don't remember her name.  … I only met her through Mr. Spear.

[Defendant-Attorneys' Counsel:] And do you remember the substance of any of the communication that you had with Marc Greenfield in relation to the underlying case?

[Mr. Townsend:] No.

[Defendant-Attorneys' Counsel:] Can you remember the substance of the communication that you had with anyone from Spear, Greenfield in relation to the underlying lawsuit?

[Mr. Townsend:] I basically talked on the phone to the gentleman on the phone, who usually didn't have any answers for me.

[Defendant-Attorneys' Counsel:] And you don't remember what his name was?

[Mr. Townsend:] No.

- 18 -

*See* Exhibit B to TCO (Deposition of Mr. Townsend, 10/10/18) at 32-35.

Further, Mr. Townsend testified:

[Defendant-Attorneys' Counsel:] Okay. At this point in time, when the Complaint was filed in December of 2012, were you aware that there was a passenger in the vehicle that hit you?

[Mr. Townsend:] I was told.

[Defendant-Attorneys' Counsel:] And who told you that?

[Mr. Townsend:] I believe – either Spear or Richman, one of those two gentlemen.

[Defendant-Attorneys' Counsel:] And did you ask them why the passenger in the vehicle wasn't being sued in the underlying case?

[Mr. Townsend:] That, I don't remember.

*Id.* at 43-44.

In addition, Mr. Townsend did not remember if it was ever communicated to him in 2012 that there were differing stories about how Mr. Kemp got the keys to be driving the vehicle at the time of the accident, *id.* at 49-50, nor did he remember if it was communicated to him in 2013 that Mr. Kemp was not a driver with permission to use the vehicle, *id.* at 51. Mr. Townsend likewise could not recall if Defendant-Attorneys ever communicated to him that Karlie Milstein's criminal defense attorney proposed that, if Mr. Townsend would write a letter stating that he was not opposed to ARD for Ms. Milstein in her criminal case, she would confirm that Mr. Kemp was a permissive user of the vehicle and that its brakes were working at the time of the accident. *See id.* at 67-69.[10] Similarly, Mr. Townsend could not

---

[10] In eventually signing an affidavit to that effect, Mr. Townsend said that he signed it voluntarily, but did not read it and understand it. *Id.* at 78-82.

remember any communications that he specifically had with Defendant-Attorneys at the time Allstate's counsel offered to go to mediation, other than that he had to be there for it, *id.* at 92-93, nor did he remember anything said to him by Marc Greenfield during a private meeting between them before the mediation started, *id.* at 95-96.

Ultimately, Mr. Townsend conceded:

[Defendant-Attorneys' Counsel:] Okay. I know that you verified signing all the documents that we reviewed, and your attorneys did produce some letters, whether or not you remember receiving them or not. You've answered those questions.

But the substance of any of the actual communications that you had with anyone at Spear, Greenfield during the whole case, you're saying you can't remember the specific substance of any of the communications; is that accurate?

[Mr. Townsend:] That is because it's been -- it's been a while.

[Defendant-Attorneys' Counsel:] Right. So, that is accurate?

[Mr. Townsend:] I guess, yes.

*Id.* at 152.

Given the lack of recall by Mr. Townsend, we agree with the trial court that "[t]he cold transcript of Mr. Townsend's deposition commands judgment in favor of all Defendant-Attorneys. [Mr.] Townsend's testimony relaying the circumstances of the legal representation and settlement does not meet any threshold for 'clear, direct, weighty and convincing' proof." TCO at 7. Because Mr. Townsend is unable to remember key facts regarding Defendant-Attorneys' representation, he has not adduced sufficient evidence to support

his fraudulent inducement claim.[11]  Accordingly, the trial court properly granted summary judgment in favor of Defendant-Attorneys on this basis.[12]

Order affirmed.

---

[11] To the extent Mr. Townsend claims that, pursuant to ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932), "a moving party cannot rely upon the oral testimony of witnesses as support for a Motion for Summary Judgment[,]" ***see*** Mr. Townsend's Brief at 25, we deem this claim waived for lack of development.  ***In re R.D.***, ***supra***.  Notwithstanding, this Court has explained that:

> ***Nanty–Glo*** precludes summary judgment where the moving party relies solely upon testimonial affidavits and depositions of ***his*** witnesses to ***resolve material issues of fact***.  However, if there are no material issues of fact, or if the non-moving party has failed, in the first instance, to allege facts sufficient to make out a *prima facie* case, then summary judgment may be granted properly, even if the moving party has only set forth the pleadings and depositions of his witnesses in support thereof.  … ***Error only occurs if the moving party, in relying upon the testimonial affidavits of his witnesses, is attempting to resolve a material issue of fact, or more importantly, is attempting to demonstrate the lack of any material issues of fact by asserting that the testimony of his witnesses is uncontradicted.***

***Dudley v. USX Corp.***, 606 A.2d 916, 920 (Pa. Super. 1992) (footnote omitted; emphasis added).  Here, even if Mr. Townsend had not waived this argument, ***Nanty-Glo*** would not preclude the entry of summary judgment in favor of Defendant-Attorneys because Mr. Townsend's own testimony demonstrates that he does not remember critical aspects of Defendant-Attorneys' representation, which renders him unable to prove fraudulent inducement by clear, precise, and convincing evidence.

[12] Given our disposition, we need not address Mr. Townsend's third issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/13/20</u>